Next case is Massachusetts Bay Insurance Company v. Neuropathy Solutions. Good morning. I'd like to set the stage for this insurance coverage action, give a little background on what the insurance issues are, and then go into the specific allegations that the district court addressed and go over why I believe there's no actual coverage for those allegations. So, as I mentioned, this is a declaratory relief insurance coverage action. The underlying action was a medical malpractice case. This is a commercial general liability policy. The questions before the court were both duty to defend and duty to indemnify. The duty to indemnify is what we're focused on here today. The reason for that, the duty to defend is a broader standard. It's whether there is a potential for coverage so you can have just one loose allegation and get there. In addition, in terms that this is a reimbursement claim, my client, Massachusetts Bay Insurance Company, defended the insured under reservation of rights and they also paid a settlement of $2 million. So the defense costs are relatively minimal. It's the $2 million that we're seeking back on the duty to indemnify issue. And so the district court indicated that there wasn't potential for coverage and therefore a duty to defend. And then they just jumped right to there is a duty to indemnify. Well, that's a misstep because if there was no duty to defend, because it's a broader standard, then that's true. There would also be no duty to indemnify, which is a narrower standard. However, the opposite is not true. You can have a potential for coverage and then you can have no actual coverage. It needs to be the kind of coverage that the settlement was actually, the settlement was for a covered claim, not just a potential for coverage. With that being said, going to the specific allegations that were at issue. So as I said, this is a medical malpractice underlying action. The claim was, so neuropathy is the insured that we're dealing with here and they had a contract with elite medical group. And the, I think neuropathy will focus on, well that contract was just the role of neuropathy was to hire non-professional staff to manage the non-medical portions. We didn't get involved based on the contract with these professional services of the medical care. Well, that's not the reason that they were alleged to be liable. It was, the allegations were much greater in terms of their role. So elite medical was the doctors allegedly that performed a medical stem cell treatment on this patient, Burnell, and gave him permanent paralysis is what they argue. So the bodily injury here is that, the paralysis, and that's where the occurrence happens. So, taking a step back, that argument, excuse me, that agreement says that neuropathy shall not provide professional services. I guess your argument is that they either violate that agreement or they went beyond whatever that agreement said in this case here. Correct. So the insuring exclusion, I guess, also applies essentially to people who are acting on behalf of or under the supervision of neuropathy. Exactly. So that was a focus that the district court did not talk about. And what I did want to talk about today is that the allegations are essentially that elite medical was acting on behalf of neuropathy. They created advertisements, false advertisements, directed them intentionally at Burnell and sold them that this is the treatment you need. You're going to be cured after this. And here you go, here's our doctors. Didn't distinguish between the two of them. It's just behind the scenes with the contract that we know there were two different parties. So that's what allegedly happened. It wasn't just, oh, we're going to pay $2 million because you hired the wrong secretary, like the contract says, that this was because you were heavily involved in the rules of the permanent paralysis. So take a step back. Again, there needs to be the insuring agreement satisfied. And then there needs to be an analysis of whether the professional services exclusion applies. So do we need to take them in that order? Yes. We could assume there was coverage and then deal with the exclusion. Or do we need to decide if there was actually mutual coverage in the first place? You have to do it two steps. That's black letter law. It's always the insuring agreement comes first, whether you satisfy the insuring agreement, and then secondly, whether the exclusion then overcomes that. So with that said, the, so food pro is. In our decision, we don't have to address that, right? I mean, we can just assume, just assuming that there's coverage and address the exclusion. I understand your point that when someone makes a claim to insurance company, you have to first see that. But as a court, we don't have to do that, do we? Well, you have to determine whether there was actual coverage to determine whether we have a reimbursement right. So to do that, you have to go through both the insuring agreement and the exclusion. And so I would argue that we do all the time. We assume certain things and then decide another issue. I mean, I understand from your point, if an insurer comes to the insurance company, you always have to look, is there coverage? But, I mean, if we were to decide, we don't have to. We just assume there's coverage, can't we? I'd certainly recommend that you do both because I think that's a full, complete analysis. So what I would say is that the act that caused the injury was one of professional service. So it was a medical treatment that really caused this injury. And so that is clear based on this exclusion and just based on general law. That's the classic example, medical treatment, medical malpractice, that's professional. Let me ask you this though. Does a professional service exclusion cover all the conduct that's alleged, all the conduct? That's a good question. The combination of there being, so that's why I would still focus on both the occurrence and so forth. For example, the fact that there was these fraudulent fees, high interest rate, well that's not an occurrence. That's not what we're dealing with here. So the occurrence is the bodily injury that caused it by this medical treatment. Well that is, again, professional services. So it was performed by EMG on behalf of neuropathy, falls right within that exclusion. And so what these cases like, some of the ones that well, this engineer has a contract with somebody else, not the person that fell in the company that told them to go on the mezzanine floor and do this work. It was unrelated third party, so I don't know that they oversaw this and so forth. Here, there was a direct connection and so, again, the treatment itself clearly happened as a result of the professional service and during the professional service. Is it going to be, if there's anything here that's an occurrence, it's excluded? I mean, there's some things you seem to say are not occurrences in this constellation of facts, but if there is an occurrence here, your position is excluded. That's a fair summary. Yeah. So one of the footnotes in FoodPro is, well, Hollingsworth is completely different. That's an ear piercing case. And they say, well, that one had happened because of, during the performance of the ear piercing and as a result of the failure to perform the ear piercing. That's what you have here. You have the medical treatment being, it happened during the medical treatment and caused by the negligent medical treatment. So just going through the specific allegations that the district court focused on and going over each one individually as to why I believe that, as you've nicely summarized it, either there is no occurrence for this or the professional service exclusion applies. Number one, false and misleading and targeted advertising. The district court agrees exclusion applies. In fact, professional services specifically advertise as part of that definition. Number two, they say neuropathy. The allegation is that they diagnosed Burnell and recommended the specific treatment, again, going above and beyond this administrative function of the contract. Again, the district court agrees health exclusion applies. It specifically applies to health advice and treatment. Then the delegation to EMG, the elite medical group, as your honor pointed out, we would say that that was on your behalf aspect of the professional services exclusion. The discriminatory sales tactics. So number one, the policy does not provide coverage expressly for intentional the paragraphs that are cited for those discriminatory sales tactics say that it was, they were sales tactics designed to convince Burnell that he needed the treatment. So that's, those are specific quotes, quote, designed to convince, quote, needed the treatment. So you're talking about, again, health and advice and instruction. It's not just outside of the context of that based on discrimination as an elder or Hispanic and so forth. It's clearly within the professional services exclusion and that exclusion applies to all types of coverage, the bodily injury or the personal advertising injury. Going on to the next page, they talk about the, well, oh, the EMG contract. It's, as we talked about, for hiring non-professional staff, non-medical persons. Well, again, none of that caused the injury. So then the district court goes on to, well, what did cause the injury? And they, they focus on two things. Number one, the misrepresentations with an intent to induce Burnell to undergo treatment. Those, those are not an occurrence. They, and secondly, the advice applies because once again, it's the treatment that they suggested. It is part of what they're claiming is a misrepresentation. They suggest this treatment. That's, that's health advice. That's expressly under the professional services exclusion. Then secondly, you have about three minutes if you want to reserve any time. Sure. Then the injections themselves performed by EMG. Again, clearly, clearly a professional service medical treatment done on your behalf. Lastly, they talk about the neuropathy. Tried to summarize it as signing up consumers, sending them to a medical provider, collecting funds. Again, that's taking out of context of specifically what was alleged, why this $2 million was paid. It was paragraph 61 says designed to convince, needed the treatment. Again, on your behalf and with collecting funds, what was not an occurrence. If there aren't any other questions, I'll reserve the last two minutes, 40 seconds. Thank you. Hi. Good morning, your honors. Richard Edge, union on behalf of neuropathy solutions and thank you for allowing us to argue. It is a rare event in the mind circuit and I appreciate it. Let us begin with a little context because we're sharing these arguments out of context. The context is, is there reimbursement action? And under a reimbursement action, the carrier, insurance carrier, since it's seeking money back, has the burden of proof on all issues. So what's the issue here? The issue here is they paid the money to settle the case. Now, we hear a lot of talk here about actual coverage and all that. The actual coverage in identify comes down to a simple proposition. It's a duty to either pay a judgment or a settlement under California law. And how do you determine that? Well, it is determined in a couple of ways. First, you look at the allegations of the complaint and you ask yourself, are all these a couple of ideas? First of all, their burden of proof. Second, they chose, they chose to seek all of the money back. All the money, not part of the money, which they could have done. They could have said some of these claims are covered, some are not. No, they wanted it all back. That meant they had to say, they had to prove all of the allegations of the complaint are not covered for one reason or another. They don't arise out of an occurrence. They don't arise out of personal injury. They're somehow excluded by professional services exclusion. That was their task. What are the things that you think are not excluded that should be, should be the focus? I would start, I think, with the inducement, the inducement of Mr. Bernal to undergo this treatment. There is, there is, it's, you know, they're not, you know, counsel's not saying this, but it's really talking about causation. He's saying that he's applying it but for causation testing, but for the injections, the doctors, you know, the doctors work, the nurses work, that, you know, Mr. Bernal would not have been injured. I thought it was an inducement to undergo a treatment that was a professional service. Yes, but no, it's not a professional service because it is, if you look at the complaint, which is the only thing we have here that talks about the facts, the complaint is mixed on this subject. The complaint alleges, you know, talks about all this and then says, well, no, it's not a professional service. No, it's not a professional service. No, it's not a professional service at various points along, along the way. And they didn't, and that's the only evidence besides the management services agreement Judge Carter had in front of him, only evidence. And so, how do they deal with those allegations that, you know, that this is not a professional service? They don't. They don't, they didn't bring in evidence, say, from deposition testimony of neuropathies employees or from the doctor or from the nurse that, yeah, it was all, you know, basically. Part of the allegation in the Bernal complaint is that people were representing themselves as professionals and then providing unprofessional services. So, I don't, that would seem to fall within the exclusion. Yes, but then the complaint, you know, the complaint specifically denies at various points along the line that these people were professionals. Right, accusing them of misleading Bernal at representing themselves as professionals, but apparently turning out to be not because they performed, you know, deficient medical procedures on him. Well, they also, they also engaged in the promotion of these procedures. Isn't that advertising? That is, that is advertising, but advertising is not necessarily a professional service. A professional service requires some specialized skill. A license is sometimes, you know, a license is sometimes found in professional service exclusion cases. It is a, you know, some kind of learned profession. If you look at all. The other exclusion explicitly mentions advertising. True, but. Advertising isn't the regulated industry with licensing, so I'm not It is, it is, it does mention, it does mention advertising, but again, you have to take that in the context of a professional service. Under California law, a professional service does require some degree of training, some specialized knowledge. There's no allegation of that here. In fact, the allegation is to the contrary, that these people didn't have specialized training, specialized knowledge, and that was the problem. But, you know, getting back to what this case is. It is not simply a case of, you know, medical malpractice, as counsel calls it. It is basically a case of promotion, marketing, and then medical malpractice. It is not decided on the basis of but-for causation, but for the medical malpractice, the use of an improper product, and so on, that there would, you know, that there would be no loss. It is under California law, as determined by, explained by the California Supreme Court in the Liberty Surplus Insurance case. You know, you have coverage if the act you're talking about is a substantial factor in causing a loss. Well, here the promotion is a substantial factor. It's not just a medical malpractice, not at all. And I'd like also to talk about the discrimination coverage, which counsel just sort of sloughed off. That's actually very important here, because if you look at paragraphs 45, 61, and 62 of the First Amendment complaint, you have discrimination in the promotion of these services, alleged discrimination on two bases. One, that Mr. Bernal was Mexican-American, and therefore there was ethnic discrimination, and two, that he was old. This program was promoted specifically to people who were elderly and who came from minority backgrounds. That's, let's say, alleged in paragraphs 45, 61, and 62 of the First Amendment complaint. And then you even have a cause of action here for elder abuse, and that is the that is on page 119 of the record, the fourth cause of action, paragraphs 99 through 104. And, you know, there may be an argument here somewhere that, well, you know, he didn't really seek first, you know, bodily injury damages for this. He just sought reputational damages. That's now not how paragraph 104 reads. It basically says that he sustained both special and general damages as a result of the elder abuse. Now, counselors talk about it, you know, they don't cover intentional discrimination. Actually, they do. What they don't cover is discrimination where the insured, that they have insured a corporation expects or intend to cause the injury. There's no proof of that here. No allegations here that they expected or that a high corporate officer expected to cause or intend the injury. So, they do cover, you know, essentially intentional discrimination. And my point is, and by the way, this personal injury coverage, the discrimination coverage, does not require an occurrence at all. So, it is much broader in that sense than the bodily injury coverage. So, you know, my point is they had to eliminate all the basings for coverage. By demanding that my client repay every cent of the settlement, they had to eliminate all the basings of coverage. And they had to do that based on the evidence that was submitted to Judge Carter, which is essentially the complaint and the management services agreement. And the management and the complaint essentially alleges throughout that this is non-professional, that these people were non-professional, that they were not engaged in providing professional services, that they were in some sense, you know, ministerial people. They had no specialized knowledge or training, no licensing. So, you know, it is a mixed complaint. And... But you agree that the complaint, I mean, that what was before Judge Carter was the proper universe of materials because everyone stipulated to that? Yes, because everyone stipulated, they confined the universe. The carrier confined the universe. It's a limited universe just through the complaint, the management services agreement, the policy, and I think some miscellaneous emails and some other documents. No testimonial, no other documentary evidence. That's all you had. That's all Judge Carter had. And they said, you know, make your decision based on this. So, since they're saying we will rely on the complaint alone, then they have to show their professional services exclusion applies and excludes everything in the complaint, even though the complaint says on its face much of this activity was non-professional. They just didn't do that. What do we do with the fact that the district court seemed to conflate the duty to indemnify and the duty to defend? I think, I'm not quite sure why the district court did that because they are distinct duties. But the way this case came down for Judge Carter, they said it ended up the same. The duty to defend is eliminated only if you prove no allegation of the complaint can be covered. And because the way they chose to present their case is limited to the evidence, it comes down to the same thing. They escape coverage. They get reimbursement only if they prove no allegation of the complaint is covered. That was their choice. They could have brought in other evidence to show that this really was nothing more than a medical malpractice case. That was all the plaintiffs were complaining about. They could have brought in evidence to that effect. They did not. They relied on the complaint and the complaint alone. And so, they are left with that choice. They are stuck with that choice. Unless the court has questions, I'll sit down. Thank you. Your Honor, as far as the statements, the general professional services without a definition is not just the standard on exclusion. As the court pointed out in response to advertising, it is expressly part of a professional service. And also, it was indicated that discrimination, that intentional discrimination is not excluded. And they referenced expected or intended injury. There's a specific intentional discrimination portion of page 646 that says intentional discrimination is not covered. Would it also fall, assuming it were covered, would it also fall within the exclusion for professional services just given the way it was already generalized? Yeah, exactly. So, then it goes back to the fact that the definition is not even just professional services. It's professional services, treatment, advice. So, you have to include the entire definition. And so, it was an advertising. So, when counsel says that, well, it's not just the medical malpractice. It's all of the promotion and marketing that led to that. That's all part of the advertising and advice that was given that, hey, you've got this diagnosis. We've got the cure. And that applies to the elder abuse allegation? Yeah, the elder abuse allegation. Good question. That was for the financial sum saying for $13,250, this was this exorbitant rate. You took advantage of me. It's not an intentional form of discrimination. And the professional services exclusion applies as well because it's all part of the advice of, hey, pay this, and you can get this great treatment. I don't have any further comments. Great. Thank you both for the helpful argument. The case has been submitted.
judges: LEE, BRESS, MENDOZA